**SCHENCK, PRICE, SMITH & KING LLP**
John Ursin, Esq. (032651993)
Jeff LaRosa, Esq. (014221993)
Matthew R. Parker, Esq. (311822020)
220 Park Avenue | PO Box 991
Florham Park, New Jersey 07932
*Attorneys for Plaintiffs,*

| | |
|---|---|
| GRACE'S DREAM, LLC and JACOB DAYAN,<br><br>Plaintiffs,<br><br>v.<br><br>STONE HARBOR MARINA INC. D/B/A STONE HARBOR YACHT SALES; PB HOLDCO, LLC D/B/A PURSUIT BOATS; BOSUN'S ASSETS & OPERATIONS, LLC D/B/A BOSUN'S MARYLAND; JOHN DOES 1-10 (fictitiously named individuals), and XYZ CORPORATIONS 1-10 (fictitiously named corporations)<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>OCEAN COUNTY,<br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, Grace's Dream, LLC ("Grace's Dream") and Jacob Dayan ("Dayan") (collectively "Plaintiffs") by way of Complaint against defendants Stone Harbor Marina Inc. d/b/a Stone Harbor Yacht Sales ("Stone Harbor Yacht"), PB Holdco, LLC d/b/a Pursuit Boats ("Pursuit Boats"); Bosun's Assets & Operations, LLC d/b/a Bosun's Maryland ("Bosun's Maryland"); JOHN DOES 1-10 (fictitiously named individuals), and XYZ CORPORATIONS 1-10 (fictitiously named corporations) (collectively with Stone Harbor Yacht, Pursuit Boats, and Bosun's Maryland "Defendants"), state as follows:

## THE PARTIES

1. Grace's Dream is a limited liability company organized under the laws of New Jersey with a principal place of business located at 3535 Route 66 Suite 7, Neptune, New Jersey.

2. Mr. Dayan is an individual residing in the State of New Jersey and is the sole shareholder of Grace's Dream.

3. Stone Harbor Yacht Sales is a corporation organized under the laws of the State of New Jersey with a principal place of business at 1140 Stone Harbor Blvd. Stone Harbor, New Jersey.

4. Pursuit Boats is a limited liability company organized under the laws of the State of Florida with a principal place of business at 3901 St. Lucie Blvd Fort Pierce, FL 34946. Malibu Boats, Inc.

5. Bosun's Maryland is limited liability company with a principal place of business at 100 Falmouth Rd Mashpee, MA, 02649-2722.

6. John Does 1-10 are fictious individuals who have provided assistance, help, or benefited from Defendants' unlawful acts.

7. John Roe Corps. 1-10 are fictious corporations or organizations who have provided assistance, help, or benefited from Defendants' unlawful acts.

## FACTS COMMON TO ALL COUNTS

**A.  Purchase of the Boat**

8. On or about September 12, 2021, Grace's Dream contracted with Stone Harbor Yacht sales to purchase a 2021 Pursuit S428 (the "Boat") for $1,194,044.

9. The Boat is a four-engine center-console sport boat designed for fishing, cruising, and/or entertaining and is manufactured by Pursuit Boats.

2

10. After taking into account taxes, registration fees, and the trade-in value of another aquatic vehicle owned by Grace's Dream, the purchase price for the Boat totaled $904,637.

11. On or about September 23, 2021, Mr. Dayan wired $904,637.00 to Bosun's Maryland who held the title to the Boat.

12. As memorialized in the Manufacturer's Statement of Origin, which was provided to Plaintiffs while they were in the process of purchasing the Boat, Bosun's Maryland had received title to the Boat from the manufacturer, Pursuit Boats, on or about May 25, 2021.

13. In transferring title to the Boat, Pursuit Boats had certified that the Boat was new and that the transfer of the Boat to Bosun's Maryland was done in the ordinary course of trade and commerce.

14. On November 1, 2021, Mr. Dayan, in anticipation of obtaining the Boat executed entered into a one-year annual rental agreement with Morgan Realty & Development, LCC d/b/a Chanel Club Marina for dockage space. The slip price set forth in this agreement was $9,350.00.

15. On or about February 2, 2022, Grace's Dream obtained title to the Boat.

16. After obtaining title to the Boat, Grace's Dream took physical possession of it.

**B.  Problems Arise with the Boat**

17. Upon taking possession of the Boat, Plaintiffs began to experience problems with it, and from the onset, Plaintiff's had to deal with material defects in the appearance and with the performance of the Boat including serious mechanical, engine, electrical and computer/navigation failures.

18. Specifically, on May 22, 2022, the Boat's wiper fuse blew out, a crack on the fiberglass Tuna/dive door was discovered, and Plaintiffs experienced water dripping through the hardtop above the seat.

19. On May 23, 2022, Plaintiffs discovered that the Boat's generator did not stay on, and that Plaintiffs could not run the generator for more than 30-40 minutes before it would shut off.

20. On May 23, 2022, Plaintiffs also discovered that the Boat's pistons/shocks were not strong enough to hold up the deck doors, that the shades in the cabin did not stay up and that the fish boxes were not flush to the deck.

21. Despite notifying Defendants of these multitude of problems, by June 23, 2022, Defendants still had not been able to fix the generator from shutting off, had still not address the water leak occurring in the hardtop's light, and had failed to address the faulty windshield wiper which had suddenly stopped working.

22. Moreover, by June 23, 2022, Plaintiffs had also discovered rust stains all over the back of the Boat and that the Boat's trim taps did not work.

23. Plaintiffs also experienced engine failure on several separate instances including on July 31,2022, August 1st, 2022, June 29, 2023, July 6, 2023, and July 12, 2023.

24. In using the Boat, Plaintiffs also experienced faulty bilge pumps, salt water in the gas tank, the anchor light sheering off, GPS issues, and losing generator power.

25. Many of these issues occurred while Mr. Dayan and his family and guests were tens of miles from shore.

26. While Mr. Dayan and his passengers were able to escape these situations without any serious injury, Mr. Dayan's safety and the safety of his guests were nonetheless imperiled by the Boat's continued performance failures.

27. After the August 2022 incident, Mr. Dayan lost confidence in the seaworthiness of the Boat and decided to pull it from the water out of concern for the safety of his family.

28. The decision to pull the Boat cost Plaintiffs the balance of the 2022 boating season.

29. On or about August 9, 2022, Kevin Allen, the director of Director of Quality Assurance and Customer Relations at Pursuit Boats contacted Mr. Dayan to discuss the categorical issues Mr. Dayan faced with the Boat.

30. In his August 9, 2022, email, Mr. Allen acknowledged that the following problems had been experienced with the Boat since its delivery to Plaintiffs:

- Multiple hard top leaks;
- Banging noise from behind the helm;
- Horn inoperable;
- Wiper breaker pops;
- Under gunnel lighting, starboard, hanging down;
- Bad hard top courtesy light, replaced;
- Caulking moldy, sloppy;
- Decal on cockpit drain;
- Wires reversed on cockpit light switches;
- Electric seat slide inoperable;
- Screws stripped on acrylic panel below cockpit galley;
- Upholstered helm top panel needs replacement;
- Generator shut down;
- Enclosure had fit and stitching issues;
- High water alarm kept sounding with minimal water;
- Forward bilge pump inoperable;
- Aft bilge pump auto not working;
- Adjustment required for various cabinet latches;
- Water accumulation in bilge;
- Trim tabs inoperable;
- Fiberglass cracking around side door in cockpit area;
- Fiberglass cracking inside companion way door;
- Saltwater found in fuel;
- Mast light snapped off , last trip. was loose before and tightened.
- Main helm breaker tripped twice last trip;
- Garmin screens powered down last trip;
- Lost Yamaha GPS signal and put boat into neutral last trip;
- Underwater lights stay in flash mode;
- Overly loose outrigger halyards;
- Incorrectly installed rod storage behind cabin seats which needs to be resecured;
- Assorted pop up warnings on Garmin units;
- Starboard fish box lid needs adjustment;

5

- Sunshade banging in closed position;
- Cabin shades won't stay up;
- Two motors shut down while returning from his last trip.

31. While Mr. Allen claimed that certain of these problems had been rectified, he recognized that a number of these issues remained unresolved.

32. In the face of the multitude of problems experienced with the Boat, Mr. Dayan requested that Pursuit Boats issue Plaintiffs a new boat or refund Plaintiffs for the cost of the Boat.

33. Despite the multitude of problems experienced with the Boat, Pursuit Boats would not consider Plaintiffs request for a refund or a new boat.

34. Instead, Pursuit Boats offered to send a representative who would attempt to address and try to resolve the many open issues. These efforts ultimately proved unsuccessful.

**C.    The Initial Remediation Efforts**

35. On or about August 15, 2022, Pursuit Boat's Field Service Technician Brian Lacky began making repairs to the Boat in an attempt to address the host of issues that were impacting its appearance and performance.

36. On or about August 30, 2022, Eastpointe Marine Consultants, LLC ("Eastpointe") met with Marine Surveyor Blair Bughler and Brian Lackey, to conduct a review of the list of problem issues that existed with the Boat.

37. In conducting this review, Eastpointe noted that Mr. Lacky addressed the following issues with the Boat:

- Fiberglass cracked on edge of boarding door;
- Transom box hinges rusted;
- Fuel Gauge calibration;
- Hard top lights out of sync.;
- Spreader lights out of synch;
- Broken end supports for the actuator;
- Slider trash door didn't lock;
- Hardtop leaking dripping out of lights and other areas;

6

- High water alarm activated with no water;
- Air compressor for horn burned out;
- Automatic bilge pump not working;
- Water in aft bilge compartment;
- Scratch on cabin entry door face;
- Crack on port side under speaker;
- Isinglass ripped on starboard side;
- No snaps on sides on the sliding seat;
- Port center engine leaking substance;
- Hand rail on port side loose;
- Rust on pop up cleats;
- Forward bilge pump would run but no water.;
- Salt water in fuel tank;
- Overhead lights leaking;
- GPS unit shows intermittent message;
- Starboard side wiring coming off;
- Hardtop lights not in-sync;
- Silicon not good;
- Water getting into hardtop lights-leaks from GPS pucks not being properly bedded to seal against leaks;
- Top dash warped;
- Light strip on starboard falling off;
- Rips on track for isinglass;
- Wires reversed on cockpit lights;
- Paint corrections and fiberglass cracks;

38. After conducting a review of the work undertaken by Mr. Lacky and taking the Boat on a sea trial, Eastpointe concluded that all needed repairs had been made to the Boat.

39. Thereafter, Pursuit Boats delivered the Boat back to the Marina on September 6, 2022.

40. However, during delivery, Pursuit Boats noted new problems that it experienced with the Boat, including: (i) problems pertaining to the wiper arm becoming loose from the wiper motor shaft and not operating correctly; and (ii) water dripping from an area around the hardtop.

41. Based on these newly discovered issues, Pursuit Boats enlisted Stone Harbor to perform further review of the Boat on or about September 8, 2022.

7

42. Plaintiffs ultimately pulled the Boat from the water for winter storage on October 6, 2022.

43. Despite the multitude of repairs made to the Boat during the 2022 season, Plaintiffs placed the Boat in winter storage with lingering uncertainty about its seaworthiness.

**D.  Plaintiffs Experience Further Problems with the Boat During the 2023 Season**

44. On May 12, 2023, Plaintiffs moved the Boat from Stone Harbor Marina to the Channel Club Marina.

45. On May 13, 2023, May 18, 2023, May 29, 2023, and June 27, 2023, Plaintiffs were able to use the Boat to go fishing without incident.

46. However, on June 29, 2023, while fishing offshore, Plaintiffs observed the Boat's starboard engine shaking, the Boat's RPM gauges starting to fluctuate, and the Boat's engines losing total power.

47. As a result of the engine failures, Plaintiffs had to have the Boat towed to the Channel Club Marina.

48. On June 30, 2023, Stone Harbor had a mechanic examine the Boat and replace the fuel filters and take a fuel sample.

49. However, these repairs did not ameliorate the Boat's engine issues.

50. Instead, on July 6, 2023, while fishing offshore, Plaintiffs experienced a slow loss of engine power to the Boat.

51. The Boat's engines eventually lost all power before Plaintiffs could make it back to the Channel Club Marina.

52. Plaintiffs were then forced to call a tow boat for a tow back to the Channel Club Marina to have the Boat hauled out.

8

53. On July 10, 2023, Twin Rivers Marina Mechanic Rich Ketchow pumped salt water and salt crystals out of Boat's fuel tank and changed all filters on the Boat.

54. On July 11, 2023, Plaintiffs met with Pursuit Boat's technician Brian Lackey to discuss the ongoing problems with the Boat. In conjunction with this discussion, Brian removed the portside panel on the Boat to inspect the fuel vent in an attempt to determine possible entry point for the salt water in the fuel tank.

55. On July 12, 2023, the Boat was launched but the Boat's engines would not start.

56. Mechanic Rich Ketchow was then called and was able to eventually start the Boat's engines.

57. Thereafter, the Boat was taken for a sea trial off the tip of Sandy Hook. The Boat was run at high RPMs where possible for the trial. After a wide turn to port, the Boat's RPMs began to fluctuate and the Boat's engines lost power.

58. The Boat was then returned to the marina on two engines but lost a third engine entering the marina.

59. On July 13, 2023, the Boat's fuel filters were checked for water, but none was found.

60. However, when the Boat's fuel filters on the engines were examined, salt was found to be present in them.

61. Further inspection found salt clogging a fuel pump on the starboard center engine making it inoperable.

62. It was then determined that the Boat would be taken to Stone Harbor Marina. The Boat was then removed on July 18, 2023.

63. To date, the repairs on the Boat have not been completed and the Boat fails to conform to the specifications and warranties of the manufacturer, Pursuit Boats.

64. Moreover, and despite demand, Defendants refused to replace the Boat despite the pervasive defects continuing and being beyond repair.

65. Because of these ongoing issues, Plaintiffs lost the use of the Boat for the balance of a second consecutive boating season.

66. Additionally, the failure of Defendants to repair the defects or replace the Boat substantially impaired its use, value and safety to Plaintiffs.

67. On or about August 31, 2023, Plaintiffs formally requested that Defendants repurchase the Boat.

68. To date, Defendants have failed and refused to repurchase the Boat.

## **FIRST COUNT**
**(Breach of Contract)**

69. Plaintiffs repeat each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

70. Plaintiffs and Defendants entered into a legally binding contract for the purchase of the Boat.

71. Plaintiffs performed under the contract by making full payment to Defendants.

72. Defendants breached the contract by failing to provide Plaintiffs with a working and non-defective Boat as required under the terms of the agreement.

73. Defendants' breach of the contract proximately caused Plaintiffs to incur significant and ascertainable losses and damages including use and enjoyment of the vessel.

**WHEREFORE**, Plaintiffs Grace's Dream, LLC and Jacob Dayan respectfully requests that the Court enter judgment in their favor and against defendants Stone Harbor Marina Inc. d/b/a

10

Stone Harbor Yacht Sales, PB Holdco, LLC d/b/a Pursuit Boats; Bosun's Assets & Operations, LLC d/b/a Bosun's Maryland and award Plaintiffs (i) a refund of the $1,194,044 payment to Defendants with interest; (ii) other compensatory damages to be determined at trial, with interest; (iii) other consequential damages be determined at trial, with interest; (iv) attorneys' fees and expenses; and (v) all other legally permissible relief that the Court deems appropriate and just.

## SECOND COUNT
### (Violation of the Consumer Fraud Act ("CFA"))

74. Plaintiffs repeat each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

75. The CFA provides, in relevant part, that:

> practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice

N.J.S.A. 56:8-2.

76. Defendants engaged in "affirmative acts" of deception under the CFA by making misrepresentations about the condition and quality of the Boat prior to Plaintiffs purchasing it.

77. Specifically, Defendants misrepresented the seaworthiness of the Boat, the Boat's ability to be used as an offshore recreational fishing vessel, and the Boat's ability to be used as a recreational fishing vessel off the North Atlantic Coast.

78. Defendants made these misrepresentation both verbally and through written materials distributed to Plaintiffs.

79. Defendants also engaged in concealment of material facts by not notifying Plaintiff of the actual condition, limitations, and quality of the Boat prior to Plaintiffs purchasing it.

11

80. Defendants used these material misrepresentations and omissions to fraudulently induce and entice the sale and purchase of the Boat by Plaintiffs.

81. As a result of Defendants' unlawful conduct, Plaintiffs have incurred significant and ascertainable losses and damages.

**WHEREFORE**, Plaintiffs Grace's Dream, LLC and Jacob Dayan respectfully requests that the Court enter judgment in their favor and against defendants Stone Harbor Marina Inc. d/b/a Stone Harbor Yacht Sales, PB Holdco, LLC d/b/a Pursuit Boats; and Bosun's Assets & Operations, LLC d/b/a Bosun's Maryland and award Plaintiffs (i) a refund of the $1,194,044 payment to Defendants with interest; (ii) other compensatory damages to be determined at trial, with interest; (iii) other consequential damages be determined at trial, with interest; (iv) trebled damages under the CFA; (v) other punitive damages; (vi) statutory attorneys' fees and expenses with appropriate attorney fee enhancement; and (vii) all other legally permissible relief that the Court deems appropriate and just.

## THIRD COUNT
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

82. Plaintiffs repeat each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

83. Every contract in New Jersey contains an implied covenant of good faith and fair dealing.

84. There existed a contract by and between Plaintiffs and Defendant for the purchase of the Boat.

85. Defendants acted in bad faith with the intent to deprive Plaintiffs of their reasonable expectations under the contract by failing to deliver a non-defective and seaworthy Boat to Plaintiffs.

12

86. Defendants breach of the implied covenant of good faith and fair dealing proximately caused Plaintiffs to incur significant and ascertainable losses and damages.

**WHEREFORE**, Plaintiffs Grace's Dream, LLC and Jacob Dayan respectfully requests that the Court enter judgment in their favor and against defendants Stone Harbor Marina Inc. d/b/a Stone Harbor Yacht Sales, PB Holdco, LLC d/b/a Pursuit Boats; Bosun's Assets & Operations, LLC d/b/a Bosun's Maryland and award Plaintiffs (i) a refund of the $1,194,044 payment to Defendants with interest; (ii) other compensatory damages to be determined at trial, with interest; (iii) other consequential damages be determined at trial, with interest; (iv) attorneys' fees and expenses; and (v) all other legally permissible relief that the Court deems appropriate and just.

## FOURTH COUNT
### (Unjust Enrichment)

87. Plaintiffs repeat each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

88. Defendants received a benefit from Plaintiff, specifically $1,194,044 in total compensation.

89. In exchange for this payment, Plaintiffs expected a working and non-defective Boat.

90. Defendant failed to provide Plaintiff with a working and non-defective Boat.

91. Under these circumstances, Defendants retention of that payment would be unjust, and it has therefore been unjustly enriched.

**WHEREFORE**, Plaintiffs Grace's Dream, LLC and Jacob Dayan respectfully requests that the Court enter judgment in their favor and against defendants Stone Harbor Marina Inc. d/b/a Stone Harbor Yacht Sales, PB Holdco, LLC d/b/a Pursuit Boats; Bosun's Assets & Operations,

LLC d/b/a Bosun's Maryland and award Plaintiffs (i) a refund of the $1,194,044 payment to Defendants with interest; (ii) other compensatory damages to be determined at trial, with interest; (iii) other consequential damages be determined at trial, with interest; (iv) attorneys' fees and expenses; and (v) all other legally permissible relief that the Court deems appropriate and just.

## FIFTH COUNT
### (Breach of Implied Warranties)

92. Plaintiffs repeat each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

93. New Jersey's Uniform Commercial Code (the "UCC") contains an implied warranty of merchantability.

94. The UCC also contains an implied warranty of fitness for a particular purpose.

95. Defendants are merchants of boats and regularly trade in these and similar types of goods.

96. The Boat sold by Defendants to Plaintiffs breached the implied warranty of merchantability and the implied warranty of fitness as the Boat, *inter alia*, was not fit for the market; not fit to be used as a recreational fishing vessel; not fit to be used as a recreational sport fishing vessel; not fit to be used as a recreational fishing vessel off the North Atlantic Coast; and generally not safe or seaworthy.

97. As a result of Defendants' unlawful conduct, Plaintiffs have incurred significant and ascertainable losses and damages.

**WHEREFORE**, Plaintiffs Grace's Dream, LLC and Jacob Dayan respectfully requests that the Court enter judgment in their favor and against defendants Stone Harbor Marina Inc. d/b/a Stone Harbor Yacht Sales, PB Holdco, LLC d/b/a Pursuit Boats; Bosun's Assets & Operations, LLC d/b/a Bosun's Maryland s and award Plaintiffs (i) a refund of the $1,194,044 payment to

14

Defendants with interest; (ii) other compensatory damages to be determined at trial, with interest; (iii) other consequential damages be determined at trial, with interest; (iv) attorneys' fees and expenses; and (v) all other legally permissible relief that the Court deems appropriate and just.

### SIXTH COUNT
### (Common Law Fraud)

98. Plaintiffs repeat each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

99. The Defendants knowingly made misrepresentations to the Plaintiffs that omitted, concealed, and suppressed information regarding the quality and condition of the Boat prior to Plaintiffs purchasing it.

100. The Defendants knew that Plaintiffs would rely upon the Defendants' acts, omissions, and misrepresentations in deciding to purchase the Boat.

101. In reliance upon the Defendants' acts, omissions, and material misrepresentations, Plaintiffs proceeded with paying $1,194,044 in total compensation for the Boat.

102. Plaintiffs have been damaged as a direct and proximate result of the Defendants' acts, omissions, and material misrepresentations.

**WHEREFORE**, Plaintiffs Grace's Dream, LLC and Jacob Dayan respectfully requests that the Court enter judgment in their favor and against defendants Stone Harbor Marina Inc. d/b/a Stone Harbor Yacht Sales, PB Holdco, LLC d/b/a Pursuit Boats; and Bosun's Assets & Operations, LLC d/b/a Bosun's Maryland and award Plaintiffs (i) a refund of the $1,194,044 payment to Defendants with interest; (ii) other compensatory damages to be determined at trial, with interest; (iii) other consequential damages be determined at trial, with interest; (iv) punitive damages; (v) attorneys' fees and expenses; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## SEVENTH COUNT
### (BREACH OF EXPRESS WARRANTIES)

103. Plaintiffs repeat each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

104. Defendants expressly affirmed and promised that the Boat would be suitable for sailing, fishing, and would be generally safe and seaworthy.

105. Defendants provided Plaintiffs with literature and documentation memorizing these same promises.

106. These affirmations by Defendants were central to Plaintiffs agreeing to purchase the Boat and became an overall part of Plaintiffs' bargain for the Boat.

107. However, the Boat has not been suitable for sailing and fishing, or generally seaworthy as multiple mechanical failures have prevented Plaintiffs from utilizing the Boat.

108. Accordingly, despite the affirmations and promises by Defendants the Boat ultimately did not conform to these promises, and, as a result, Plaintiff has incurred significant damage.

**WHEREFORE**, Plaintiffs Grace's Dream, LLC and Jacob Dayan respectfully requests that the Court enter judgment in their favor and against defendants Stone Harbor Marina Inc. d/b/a Stone Harbor Yacht Sales, PB Holdco, LLC d/b/a Pursuit Boats; and Bosun's Assets & Operations, LLC d/b/a Bosun's Maryland and award Plaintiffs (i) a refund of the $1,194,044 payment to Defendants with interest; (ii) other compensatory damages to be determined at trial, with interest; (iii) other consequential damages be determined at trial, with interest; (iv) punitive damages; (v) attorneys' fees and expenses; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## EIGHTH COUNT
### (VIOLATION OF MANGUSON-MOSS WARRANTY ACT
### 15 U.S.C.§ 2301 et seq. and 15 U.S.C. § 2310(d)(1)(A))

109.   Plaintiffs repeat each and every allegation contained in the preceding paragraphs, as if same were set forth at length herein.

110.   Defendants are consumers and purchased the Boat for recreational purposes.

111.   Included in the sale of the Boat was a written warranty provided by Pursuit Boats.

112.   Defendants, specifically Pursuit Boats, violated this written warranty by failing to keep the Boat free of defects, and by failing and refusing to repair the Boat despite demand.

113.   Defendants, specifically Pursuit Boats, further violated this written warranty by failing to replace the Boat after Defendants were unable or unwilling to ameliorate the significant and pervasive defects that existed with the Boat.

114.   Additionally, Defendants violated the warranties of merchantability and fitness for purpose which are included within the limited written warranty.

115.   Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of any judgment, costs and expenses of suit, including reasonable attorneys' fees.

116.   As a result of the actions and inactions of the Defendants, as set forth above, Defendants have breached the warranty, the implied warranty of merchantability, the implied warranty of fitness for purpose, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), and Plaintiffs have and will continue to suffer significant monetary and consequential damages, together with interest according to law.

**WHEREFORE**, Plaintiffs Grace's Dream, LLC and Jacob Dayan respectfully requests that the Court enter judgment in their favor and against defendants Stone Harbor Marina Inc. d/b/a

17

Stone Harbor Yacht Sales, PB Holdco, LLC d/b/a Pursuit Boats; and Bosun's Assets & Operations, LLC d/b/a Bosun's Maryland and award Plaintiffs (i) a refund of the $1,194,044 payment to Defendants with interest; (ii) other compensatory damages to be determined at trial, with interest; (iii) other consequential damages be determined at trial, with interest; (iv) punitive damages; (v) attorneys' fees and expenses; and (vi) all other legally permissible relief that the Court deems appropriate and just.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates John Ursin, Esq. as trial counsel for Plaintiffs in the within action pursuant to Rule 4:25-4.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues raised in the various Counts of the Complaint.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to Rule 4:5-1, I hereby certify that to the best of my knowledge and belief, the matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding. I further certify that I have no knowledge of any action or arbitration proceeding which is contemplated regarding the subject matter of this action. I further certify that I am not aware of any other parties who should be joined in this action.

          **SCHENCK PRICE SMITH & KING LLP**
          **Counsel for Plaintiff**

          By:    */s/ John E. Ursin*
                    John E. Ursin, Esq.
                    220 Park Avenue | PO Box 991
                    Florham Park, New Jersey 07932

Dated: April 4, 2024

# Civil Case Information Statement

## Case Details: OCEAN | Civil Part Docket# L-000900-24

**Case Caption:** GRACE'S DREAM, LLC   VS STONE HARBOR MARINA  INC.
**Case Initiation Date:** 04/04/2024
**Attorney Name:** MATTHEW R PARKER
**Firm Name:** SCHENCK PRICE SMITH & KING, LLP
**Address:** 220 PARK AVENUE
FLORHAM PARK NJ 07932
**Phone:** 9735391000
**Name of Party:** PLAINTIFF : GRACE'S DREAM, LLC
**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** PRODUCT LIABILITY
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: GRACE'S DREAM, LLC?** NO

**Are sexual abuse claims alleged by: JACOB DAYAN?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO
**If yes, is that relationship:**
**Does the statute governing this case provide for payment of fees by the losing party?** NO
**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** YES  **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

04/04/2024                                                                                   /s/ MATTHEW R PARKER
Dated                                                                                                        Signed