**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GRACE'S DREAM, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PB HOLDCO, LLC D/B/A PURSUIT BOATS, *et al.*, <br><br> Defendants. | Civil Action No. 24-5651 (GC) (JBD) <br><br> **OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon two partial Motions to Dismiss Plaintiffs Grace's Dream, LLC and Jacob Dayan's First Amended Complaint (ECF No. 2): the first filed by Defendants PB Holdco, LLC d/b/a Pursuit Boats (Pursuit Boats) (ECF Nos. 28), and the second filed by Defendant Bosun's Assets & Operations, LLC d/b/a Stone Harbor Marina (Stone Harbor Marina). (ECF Nos. 30.) Plaintiffs opposed, and Defendants replied. (ECF Nos. 33, 34, 35.) The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Pursuit Boats' Motion is **DENIED**, and Stone Harbor Marina's Motion is **GRANTED in part** and **DENIED in part**.

I.     **BACKGROUND**

A. **The Vessel's Purchase**

In 2021, Plaintiff Jacob Dayan began searching for a new boat to accommodate his interests in offshore fishing and to entertain his family and guests.  (ECF No. 21 ¶¶ 7-8.)[1]  That search led him to Zach Crane, a Regional Sales Director for Pursuit Boats, who he met at Stone Harbor Marina and who directed Dayan to the 2021 Pursuit S428—a "four-engine center-console sport boat."  (*Id*. ¶ 10.)  After speaking with Crane and Stone Harbor Marina's sales staff and reviewing a product brochure and Pursuit Boats' website, Dayan decided to purchase the 2021 Pursuit S428. (*Id*. ¶¶ 11-31.)

On September 12, 2021, Dayan, through Plaintiff Grace's Dream, LLC, contracted with Stone Harbor Marina to purchase the 2021 Pursuit S428 on display (the Vessel) for $1,194,044. (*Id*. ¶¶ 32-34.)  Grace's Dream is a limited liability company of which Dayan is the sole member. (*Id*. ¶ 34.)  The contract is a single page with text on both sides.  (ECF No. 28-1 at 2-3.)  On the front page, above the purchaser's signature line, the contract states the following: "BY EXECUTION OF THIS SALES AGREEMENT, PURCHASER ACKNOWLEDGES HAVING READ ITS TERMS AND CONDITIONS, WHICH ARE CONTAINED ON BOTH SIDES OF THIS DOCUMENT, AND HAS RECEIVED A TRUE COPY OF THE SALES AGREEMENT." The back of the contract contains 19 single-spaced paragraphs.  (ECF No. 28-1 at 3.)  Paragraph 14 expressly disclaims all warranties.  *Id*.  It states:

> WARRANTIES: Except to the extent required by State Law, Seller
> expressly disclaims all warranties, express or implied, including any
> implied warranty of merchantability or fitness for a particular
> purpose.  All warranties covering the equipment referenced on the
> face of this Agreement, if any, are made by and solely backed by
> Manufacturer.  Seller retains the right to perform or not to perform

---

[1]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

> any and/or all warranty claims made by Purchaser against the
> Manufacturer on any product sold or distributed by Seller. Seller
> further does not warranty nor guarantee any specific performance
> capability including but not limited to: speed, range, fuel economy,
> sea keeping ability, displacement, length overall, beam, freeboard,
> draft or dead rise.

*Id*. at 3. On September 23, 2021, Dayan wired Stone Harbor Marina $904,637 after taxes, fees, and the trade-in value of Dayan's other boat. (ECF No. 21 ¶¶ 35-36.)[2] Dayan then entered into a one-year rental agreement for dockage space, totaling $9,350.00. (*Id*. ¶ 37.)

On February 2, 2022, Grace's Dream obtained title to the Vessel and took physical possession of it. (*Id*. ¶¶ 38-39.)

## B. The Vessel's Alleged Defects

Not long after Grace's Dream took possession of the Vessel in 2022, Plaintiffs[3] claim that they discovered "material defects in [its] appearance and performance." (*Id*. ¶ 40.) Those alleged defects included (1) the wiper fuse blowing out, (2) a crack on the fiberglass Tuna/diver door, (3) water dripping through the lights under the hardtop, (4) the generator shutting off after 30 to 40 minutes, (5) the pistons/shocks failing to hold up the deck doors, (6) the shades in the cabin failing to stay up, (7) the fish boxes not being flush with the deck, (8) rust stains all over the back of the Vessel, (9) the trim taps not working, (10) the bilge pumps being faulty, (11) salt water in the gas tank, (12) issues with the GPS system, (13), the anchor light "sheering" off, (14) and multiple instances of engine failure. (*Id*. ¶¶ 41-47, 53.)

---

[2]    Stone Harbor Marina submits an affidavit from its General Manager, Michael Cerchiaro, which states that "the balance owed [on the Vessel] was paid by wire transfer from an account held by BB&T Bank in the name of Grace's Dream, LLC." (ECF No. 30-4 ¶ 3.)

[3]    Throughout the Amended Complaint, Plaintiffs Dayan and Grace's Dream plead collectively. The Court mimics that pleading style here.

In August 2022, after concern for his family's safety, Dayan pulled the Vessel from the water, losing the balance of the 2022 boating season. (*Id*. ¶¶ 50-51.) Plaintiffs notified Pursuit Boats of the issues with the Vessel, and, while Pursuit Boats was able to rectify some of the problems, several issues remained unresolved. (*Id*. ¶¶ 52-54.) As a result, Plaintiffs requested that Pursuit Boats issue Grace's Dream a new boat or refund the cost of the Vessel. (*Id*. ¶ 55.) Pursuit Boats refused and, instead, sent a representative to try to resolve the open issues. (*Id*. ¶¶ 57-58.) After repairs, Pursuit Boats returned the Vessel to Stone Harbor Marina in September 2022. (*Id*. ¶¶ 59-62.) However, during delivery, Pursuit Boats discovered new problems with the wipers as well as dripping water around the hardtop, and Stone Harbor Marina staff undertook additional repairs. (*Id*. ¶ 63.) Plaintiffs pulled the Vessel from the water for winter storage in October 2022. (*Id*. ¶ 65.)

In the late spring of 2023, after moving the Vessel to another marina, Plaintiffs went fishing on several occasions without incident. (*Id*. ¶¶ 67-68.) However, on June 29, 2023, Plaintiffs observed the Vessel's engines losing power, and the Vessel was towed to the marina. (*Id*. ¶¶ 69-70.) Although Stone Harbor Marina undertook repairs, the engine problems continued throughout July 2023. (*Id*. ¶¶ 73-84.) Pursuit Boats later removed the Vessel to its facility in Florida for additional repairs. (*Id*. ¶¶ 86-87.)

In August 2023, after informing Plaintiffs that it made the necessary repairs, Pursuit Boats sought to return the Vessel to Plaintiffs. (*Id*. ¶¶ 88-95.) Due to continued concerns about the Vessel's seaworthiness, Plaintiffs formally requested that Pursuit Boats replace the Vessel or refund Plaintiffs the purchase price. (*Id*. ¶¶ 88-94.) When it became clear that Pursuit Boats would not agree to do so, Plaintiffs requested return of the Vessel. (*Id*. ¶ 97.) However, Pursuit Boats informed Plaintiffs that they owed storage fees in the amount of $20,370 and would be responsible

for hiring and arranging transportation of the Vessel back to New Jersey.  (*Id*. ¶¶ 98, 102.) Plaintiffs allege that they were not aware that they would be liable for storage fees and Pursuit Boats did not inform them of such.  (*Id*. ¶¶ 99-105.)  The Vessel remains in Pursuit Boats' possession.  (*Id*. ¶ 106.)

### C.  Procedural History

On April 25, 2024, Plaintiffs removed this action to federal court, pursuing claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of implied and express warranties, and unjust enrichment against Stone Harbor Marina, as seller of the Vessel, and Pursuit Boats, as manufacturer of the Vessel.[4]  (ECF No. 1.)

On June 28, 2024, Plaintiffs filed the Amended Complaint.  (ECF No. 21.)  In the Amended Complaint, Plaintiffs add claims of conversion, trespass to chattels, and breach of bailment/detinue for a total of 15 causes of action.  (*Id*. ¶¶ 107-235.)

On August 7 and 8, 2024, Defendants filed partial Motions to Dismiss the Amended Complaint.  (ECF Nos. 28, 30.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

Rule 12(b)(1) permits a defendant to move at any time to dismiss the complaint for lack of subject-matter jurisdiction on either facial or factual grounds.  *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction."  *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999).  In analyzing a facial challenge, a court "must only consider the allegations of the

---

[4]    The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiffs pursue a claim under the Magnuson-Moss Warranty Act.  (ECF No. 1-1 at 17-18.)

complaint and documents attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc.*, 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Solar*, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

## B. Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372

(3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Practices & Products Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III.  DISCUSSION

Defendants raise several grounds for dismissing the claims against them.  *First*, Dayan lacks standing to bring claims against Defendants, including under the New Jersey Consumer Fraud Act, because he cannot recover individually for damages suffered by Grace's Dream. *Second*, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment are duplicative of their breach of contract claim and cannot survive.  *Finally*, the contract to purchase the Vessel contains a disclaimer of implied warranties, and the Court must, therefore, dismiss Plaintiffs' breach of implied warranties claim against Stone Harbor Marina.

The Court will address these arguments in turn.

### A.  Standing

Defendants both argue that Dayan lacks standing to pursue all claims against them because Grace's Dream, the entity that was party to the contract, was directly harmed, not Dayan, its sole member.  (ECF No. 29 at 9-11; ECF No. 30-1 at 16-18.)  Similarly, Defendants assert that the Court should dismiss Dayan's claims under the New Jersey Consumer Fraud Act because Dayan has failed to sufficiently allege that he suffered an ascertainable loss distinct from Grace's Dream. (ECF No. 29 at 11-12; ECF No. 30-1 at 18-19.)  Neither Defendant states whether they challenge Dayan's standing facially or factually.

The issue of Dayan's standing turns on whether he is a third-party beneficiary to the contract between Stone Harbor Marina and Grace's Dream and, thus, permitted to pursue his claims individually, including those brought under the New Jersey Consumer Fraud Act.  It is true, as Defendants point out, that "[p]laintiffs may not sue in an individual capacity on behalf of and for damages sustained by their LLCs."  *Arakelian v. Verizon N.J. Inc.*, Civ. No. 17-02635, 2018 WL 6728503, at *7 (D.N.J. Dec. 21, 2018).  However, in the context of a contract, an individual who is a non-party to that contract may sue individually to enforce it if "it 'clearly appear[s] that the contract was made by the parties with the intention to benefit the third party' and that 'the parties to the contract intended to confer upon [the third-party] the right to enforce it.'"  *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 133 (D.N.J. 2020) (quoting *Town of Kearny v. N.J. Rail Carriers, LLC*, 2005 WL 2363101, at *3 (N.J. Super. Ct. App. Div. Sept. 28, 2005)) (internal quotation marks omitted).  The third-party beneficiary inquiry "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement."  *Ross v. Lowitz*, 120 A.3d 178, 189-90 (N.J. 2015) ("[T]he real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts."); *Grant v. Coca-Cola Bottling Co. of N.Y.*, 780 F. Supp. 246, 249 (D.N.J. 1991) ("In order to establish third-party beneficiary status, a plaintiff must show more than that the contracting parties acted against a backdrop of knowledge that the plaintiff would derive benefit from the agreement." (internal quotation marks omitted)).  A plaintiff seeking third-party beneficiary status has the burden to show that the benefit to him was "a consequence the parties affirmatively sought; in other words, the benefit to plaintiff must have been, to some extent, a motivating factor in the parties' decision to enter the contract."  *Grant*, 780 F. Supp. at 249 (internal quotation marks

omitted).  "If there is no intent to recognize the third party's right to contract performance," then the non-party is considered an "incidental beneficiary" and has no contractual standing.  *Id.* at 190.

Dayan argues that the Court may look to extrinsic evidence of intent because the contract between Stone Harbor Marina and Grace's Dream is silent on his third-party beneficiary status and, therefore, ambiguous.  (ECF No. 33 at 17-18.)  Generally, "[m]ere silence in a contract does not equate to ambiguity."  *Kruse v. JP Morgan Chase Bank, N.A.*, Civ. No. 23-4530, 2024 WL 3912982, at *8 (D.N.J. Aug. 23, 2024); *Pearlmont, LLC v. Waterfall, Inc.*, 2011 WL 2652154, at *3 (N.J. Super. Ct. App. Div. July 8, 2011).  However, "[t]he fact that a contract may [b]e silent as to the existence of a third-party beneficiary is not dispositive of the issue of intent."  *Raleigh v. Mack Indus.*, Civ. No. 84-3558, 1986 WL 15262, at *2 (D.N.J. Dec. 29, 1986).  "When the contract is silent, it is necessary to examine the pertinent provisions in the agreement and the surrounding circumstances to ascertain that intent."  *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982); *see also Consult Urb. Renewal Dev. Corp. v. T.R. Arnold & Assoc., Inc.*, Civ. No. 06-1684, 2007 WL 1175742, at *3 (D.N.J. Apr. 19, 2007) ("As the contract is silent on the exclusion of third-party beneficiaries, the [c]ourt must examine the pertinent provisions in the agreement and the surrounding circumstances to ascertain that intent." (internal quotation marks omitted)); *Est. of Carroll v. Prism Green Assocs. IV, LLC*, 2022 WL 1596712, at *6 (N.J. Super. Ct. App. Div. May 20, 2022) ("In the absence of express language either providing the right or negating it, the court must ascertain the parties' intent based on the contract's provisions and the surrounding circumstances.").

As the contract here is silent on Dayan's third-party beneficiary status, the Court will look to the circumstances surrounding the contract to ascertain the parties' intent.  Dayan claims that he was the intended beneficiary of the contract because, as pled, he sought to purchase the Vessel

"to accommodate both his offshore fishing interests as well as allowing him to entertain his family and guests," he spoke "extensively" to Stone Harbor Marina's representatives "about the manner in which he intended to utilize the Vessel," and he funded the purchase of the Vessel through Grace's Dream solely for personal use. (ECF No. 33 at 18; *see also* ECF No. 21 ¶¶ 7-33, 36-37.)

Defendants assert that the opposite is true, arguing that the contract's language and the absence of "any other objective evidence to demonstrate intent in the alternative" all point to the parties' lack of intent to name Dayan as a third-party beneficiary. (ECF No. 35 at 8; *see also* ECF No. 34 at 10-11.)[5] That is, Defendants contend that the contract's language, which is not pled in or attached to the Amended Complaint, belies the allegations underlying Dayan's standing. Stone Harbor Marina also submits an affidavit from its General Manager, Michael Cerchiaro, in which he avers that Grace's Dream paid for the Vessel. (ECF No. 30-4 ¶ 3.) Because Defendants rely on these competing facts that are outside of the complaint, the Court construes their challenge to Dayan's standing as factual. *See Hartig Drug Co. Inc.*, 836 F.3d at 268.

However, contrary to Defendants' contention, the Court has already concluded that it must look beyond the contract to the surrounding circumstances to discern whether Stone Harbor Marina and Grace's Dream intended for Dayan to benefit from the contract's existence. *See Broadway Maint. Corp.*, 447 A.2d at 909.[6] Accordingly, the Court finds that Dayan's allegations regarding

---

[5]     Pursuit Boats also argues that Stone Harbor Marina has "unequivocally" represented that it did not intend for Dayan to be a third-party beneficiary. (ECF No. 30-1 at 19; ECF No. 35 at 8.) Not so. Stone Harbor Marina contends in its brief that, based on the contract's language, there was "no intent to confer Dayan with enforceable contractual rights." (*See* ECF No. 30-1 at 19.)

[6]     *See Consult Urb. Renewal Dev. Corp. v. T.R. Arnold & Assoc., Inc.*, Civ. No. 06-1684, 2009 WL 1969083, at *3 (D.N.J. July 1, 2009) (first denying summary judgment on the question of third-party beneficiary status because "the contract itself was silent and the surrounding circumstances were unavailing . . . [and] the parties did not submit affidavits attesting to their state of mind and intention at the time the contract was signed" and denying summary judgment a second time because "the presence of such an affidavit is just one factor the [c]ourt should consider

his status as a third-party beneficiary are not merely conclusory to warrant dismissal of his individual claims. Dayan, as Grace's Dream's sole member, alleges that his intent in purchasing the Vessel was to use it for his own personal enjoyment and that he had spoken extensively to Stone Harbor Marina's representatives about purchasing the Vessel for his own personal use. The Court finds that these allegations are sufficient, at this stage, to warrant further discovery as to Dayan's status as a third-party beneficiary under the contract and that Defendants may renew their challenge regarding Dayan's standing following the completion of that discovery.[7]

## B. Duplicative Claims

### 1. Breach of the Implied Warranty of Good Faith and Fair Dealing

Stone Harbor Marina argues that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count IV) is duplicative of their breach of contract claim (Count I) and should, therefore, be dismissed. (ECF No. 30-1 at 9-11.) "Every contract contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002). Under that covenant, "neither party shall do anything which will have the effect of destroying or

---

when determining the parties' intentions[,] . . . [e]specially given the self-serving nature of the affidavits . . . [and] [the m]ore significant . . . inquiry" of "the general nature and purpose" of the contract).

[7]    *See Baum v. Goodville Mut. Cas. Co.*, Civ. No. 14-4315, 2015 WL 921615, at *1 (E.D. Pa. Mar. 4, 2015) ("[If] the defendant makes a factual challenge and contests any of the jurisdictional allegations as pled by the plaintiff, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction. . . . "[T]he court determines jurisdiction by weighing the evidence presented by the parties, but [i]f there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction" by a preponderance of the evidence." (internal quotation marks and citations omitted)); *see also Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724, 729 (D.N.J. 2017) ("[In] a factual challenge to the Court's jurisdiction[,] . . . factual disputes may require resolution via a plenary hearing.").

injuring the right of the other party to receive the fruits of the contract." *Id*. (internal quotation marks omitted).

But "[a] breach of the covenant of good faith and fair dealing [cannot] arise out of the same conduct underlying an alleged breach of contract action." *Irene v. Michael Whaley Interiors, Inc.*, Civ No. 19-14998, 2020 WL 759573, at *2 (D.N.J. Feb. 13, 2020) (internal quotation marks omitted). A "literal violation of a contract" is different. *Wade*, 798 A.2d at 1259. The implied covenant cannot "override an express term in a contract" but "a party's performance under a contract may breach the implied covenant even though that performance does not violate a pertinent express term." *Id*. at 1259-60 (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001)). In other words, "when a party breaches a duty set forth explicitly in a contract, the remedy exists pursuant to those express terms, and not pursuant to some implied obligation arising out of the contract." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, Civ. No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013); *see also Fields v. Thompson Printing Co.*, 363 F.3d 259, 271-72 (3d Cir. 2004) ("[W]here the terms of a contract are not specific, the implied covenant of good faith and fair dealing may fill in the gaps where necessary to give efficacy to the contract as written. But where the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language.").

The implied covenant of good faith and fair dealing is "to be construed narrowly and utilized only when gaps exist as to the parties' intentions." *TBI Unlimited, LLC*, 2013 WL 6048720, at *3 (citing *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 580 (D.N.J. 2010)). A party may only pursue a breach of the implied covenant of good faith and fair dealing as "an independent cause of action" in three limited circumstances: (1) "to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent

with the parties' contractual expectations"; (2) "to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term"; and (3) "to rectify a party's unfair exercise of discretion regarding its contract performance." *Hills v. Bank of Am.*, Civ. No. 13-4960, 2015 WL 1205007, at *4 (D.N.J. Mar. 17, 2015) (internal quotation marks omitted) (quoting *Kumon N. Am., Inc. v. Timban*, Civ. No. 13-4809, 2014 WL 2812122, at *7-8 (D.N.J. June 23, 2014)).

Plaintiffs' allegations in support of their claims for breach of contract and breach of the implied covenant of good faith and fair dealing are nearly identical, including as to the relief sought. (*Compare* ECF No. 21 ¶¶ 108-112 *with* ¶¶ 158-161.) Both claims center on the allegation that Defendants failed "to deliver a non-defective and seaworthy Vessel to Plaintiffs." (*Id.* ¶¶ 111, 160.) In Count I, Plaintiffs claim that this failure constitutes a breach of contract, while in Count IV they allege that this same failure represents an act of "bad faith with the intent to deprive Plaintiffs of their reasonabl[e] expectations under the contract." (*Id.* ¶¶ 111-160.)

Plaintiffs contend that they are permitted to plead their claims for breach of contract and breach of the implied covenant of good faith and fair dealing in the alternative because the contract "does not specifically address the condition in which the Vessel needed to be turned over to Plaintiffs." (ECF No. 33 at 9.) While it is true that Plaintiffs may plead alternative claims,[8] Plaintiffs base both claims on the same factual predicate—"fail[ure] to deliver a non-defective and

---

[8]    "[T]he New Jersey Supreme Court has stated that 'a [party] in an appropriate case' may plead 'alternative claims' because '[w]hen supported by the facts, a jury may determine whether [a defendant] has breached the express terms of a . . . contract, and if not, whether the [defendant] nonetheless has breached the implied covenant of good faith and fair dealing . . . .'" *Lewis v. Gov't Emps. Ins. Co.*, Civ. No. 18-05111, 2019 WL 1198910, at *3 (D.N.J. Mar. 14, 2019) (quoting *Wade*, 798 A.2d at 1263.)

seaworthy Vessel to Plaintiffs." (ECF No. 21 ¶¶ 111, 160.) Plaintiffs also expressly plead that this requirement—to deliver a "non-defective and seaworthy Vessel"—arose under "the terms of the agreement." (*Id*. ¶ 111.)

Furthermore, both district court cases on which Plaintiffs stake the survival of their implied covenant claim are distinguishable. The court in *Marshall v. Verde Energy USA, Inc.* allowed the plaintiff to proceed with his implied covenant claim because the contract's express terms provided the defendant with "unilateral discretion" regarding the plaintiff's monthly rate for electricity and the defendant may have unfairly exercised that discretion. Civ. No. 18-1344, 2019 WL 1254562, at *6 (D.N.J. Mar. 19, 2019). Plaintiffs here make no such allegation. And while the court in *Irene v. Michael Whaley Interiors, Inc.* noted that the plaintiff could plead an implied covenant claim in the alternative, "so long as the alternative claim[] meet[s] the pleading standards," it declined to make a determination on whether the plaintiff pled duplicative claims because both the breach of contract and implied covenant claims were inadequately pled. 2020 WL 759573, at *2. Because Plaintiffs breach of contract and implied covenant claims arise from the same facts, the Court finds that they are duplicative and dismisses Count IV.[9]

---

[9]     *See Lewis*, 2019 WL 1198910, at *3 ("[T]he two claims are rooted in the same allegations. For example, both claims highlight the Defendant's underpayment of claims by applying an arbitrary, unjustified 'condition adjustment' and the failure to pay sales tax, title fees, and license plate transfer fees. Given that these two claims clearly arise from the same facts, this Court finds they are duplicative."); *Webster v. Rutgers-New Jersey Med. Sch.*, Civ. No. 15-08689, 2017 WL 3399997, at *12 (D.N.J. Aug. 4, 2017) ("In this case, Plaintiff relies on the same set of facts to support his breach of the covenant of good faith and fair dealing and breach of contract claim. Both claims are predicated on NJMS's alleged improper inclusion of the Professionalism Forms in Plaintiff's MSPE and Plaintiff's inability to adequately appeal the School's decision to do so. Plaintiff does not offer an alternative theory to support his claim for breach of good faith and fair dealing."); *CRA, Inc. v. Ozitus Int'l, Inc.*, Civ. No. 16-5632, 2017 WL 2779749, at *7 (D.N.J. June 27, 2017) (dismissing the plaintiff's claim for breach of the implied covenant of good faith and fair dealing because the "factual predicate" alleged in support of that claim was "identical to the factual predicate for Count 1, breach of the non-compete and confidentiality agreements"); *Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 239 (D.N.J. 2011) ("As the remaining

### 2. Unjust Enrichment

Similarly, Stone Harbor Marina asserts that the Court should dismiss Plaintiffs' unjust enrichment claim (Count V) as duplicative of the breach of contract claim. (ECF No. 30-1 at 11-13.) To prove unjust enrichment, a plaintiff must demonstrate two elements: (1) "defendant received a benefit" and (2) "retention of that benefit without payment would be unjust." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733 (D.N.J. 2008) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). However, "[u]njust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." *Hatteras Press, Inc. v. Avanti Computer Sys. Ltd.*, Civ. No. 16-5420, 2017 WL 2838349, at *5 (D.N.J. June 30, 2017) (quoting *Nat'l Amusements, Inc. v. N.J. Turnpike Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992)). And "[a] quasi-contract claim cannot exist when there is an enforceable agreement between parties." *MK Strategies, LLC*, 567 F. Supp. 2d at 733-734 (citing *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966)).

Courts have consistently held that "absent a claim that the contract is invalid," a plaintiff cannot maintain an unjust enrichment claim, even in the alternative. *Hatteras Press, Inc.*, 2017 WL 2838349, at *5; *see also Gujja v. Inpatient Servs. of N.J., P.C.*, Civ. No. 11-9416, 2022 WL 2834998, at *2 (D.N.J. July 20, 2022); *Smith v. CitiMortgage, Inc.*, Civ. No. 15-7629, 2016 WL 8673066, at *6 (D.N.J. Aug. 5, 2016); *Kinney Bldg. Assocs., L.L.C. v. 7-Eleven, Inc.*, Civ. No. 15-7917, 2016 WL 2855063, at *5 (D.N.J. May 16, 2016) (collecting cases).

---

allegations supporting Plaintiff's claim are identical to the breach of contract claim, the second count of the complaint fails as it is duplicative of the breach of contract claim."); *see also Irene*, 2020 WL 759573, at *2 n.5 ("[C]ourts in this district do not always permit alternative pleading of claims for breach of contract and breach of the covenant of good faith and fair dealing, especially where the claims are identical.").

Plaintiffs contend that they should be permitted to pursue both unjust enrichment and breach of contract claims at this stage because the contract at issue does not "expressly set forth the condition in which the Vessel needed to be turned over to Plaintiffs." (ECF No. 33 at 12.) However, Plaintiffs do not allege that the contract or any of its provisions are invalid, void, or otherwise unenforceable, and Stone Harbor Marina makes no such argument. Indeed, Stone Harbor Marina does not move against the breach of contract claim. Without a claim of invalidity, Plaintiffs cannot plead unjust enrichment, even in the alternative. *See Freightmaster USA, LLC v. Fedex, Inc.*, Civ. No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015) ("Neither party disputes the validity of the Agreement. While [the plaintiff] is entitled to plead in the alternative, . . . absent a claim that the Agreement is invalid or that it performed work beyond that covered by the Agreement, it cannot sustain claims founded on quasi-contractual theories.").

Furthermore, the cases on which Plaintiffs rely are distinguishable from this one. First, *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004), and *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017), are both based on Pennsylvania, not New Jersey law. In addition, in *Vantage Learning*, the court dismissed the unjust enrichment claim with prejudice. 246 F. Supp. 3d at 1100-01. It reasoned that although the plaintiff contended that the defendant's "refusal to pay [] invoices necessarily implie[d] that [the d]efendant consider[ed] the Agreement void, [the d]efendant never argue[d] as much." *Id*. The court determined that the defendant's dispute was, instead, within "the scope of the Agreement's fee provision," which did not "call into question the validity of the Agreement itself." *Id*.

Finally, while the court in *MSP Recovery Claims, Series LLC v. Abbott Laboratories*, Civ. No. 19-21607, 2023 WL 8718823 (D.N.J. Dec. 18, 2023), declined to dismiss the unjust enrichment claim, the court based its decision on the fact that there was no express agreement

between the parties.  *Id*. at *17 ("Defendants point to a contract between Plaintiffs' Assignors and PBMs, and not directly between Plaintiffs' Assignors and Defendants.").  Unlike in *MSP Recovery Claims,* there is an express contract governing the parties' relationship in this case.  Thus, the Court finds that Plaintiffs' unjust enrichment claim is duplicative of their breach of contract claim and dismisses it (Count V).  *See Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 141 (D.N.J. 2020) ("I am therefore inclined to follow cases which, even on a 12(b)(6) motion, have dismissed quasi-contract claims in favor of a straightforward breach of contract claim.") (collecting cases).

### C.  Disclaimer of Warranties

Stone Harbor Marina argues that the Court should dismiss Plaintiffs' claim for breach of implied warranties (Count VI) because Grace's Dream explicitly disclaimed all warranties in the contract to purchase the Vessel.  (ECF No. 30-1 at 13-16.)  As adopted from the Uniform Commercial Code, New Jersey law permits contracting parties to modify or exclude the implied warranties of merchantability and fitness for a particular purpose.  N.J. Stat. Ann. § 12A:2-316(2).  To exclude the implied warranty of merchantability, the contract "must mention merchantability and in case of a writing must be conspicuous."  *Id.*  To exclude any implied warranty of fitness, "the exclusion must be by a writing and conspicuous."  *Id*.  A term is "[c]onspicuous" when "a reasonable person against which it is to operate ought to have noticed it."  N.J. Stat. Ann. § 12A:1-201(10).  New Jersey codifies the following examples of "conspicuous" terms:

> (a) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (b) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.*; *see also Ventura v. Ford Motor Corp.*, 433 A.2d 801, 807 (N.J. Super. Ct. App. Div. 1981) ("N.J.S.A. 12A:1-201(10) defines 'conspicuous' to include writing that is 'larger' or in contrasting type or color or which bears a heading printed in capital letters so that 'a reasonable person against whom it is to operate ought to have noticed it.'"). As the comments to § 12A:1-201 make clear, the statutory definition of "conspicuous" sets out "several methods for making a term conspicuous" or "attention-calling," but "the test is whether attention can reasonably be expected to be called to it." N.J. Stat. Ann. § 12A:1-201, cmt. 10. "Whether a term is 'conspicuous' or not is a decision for the court." N.J. Stat. Ann. § 12A:1-201(10).

As an initial matter, although the parties repeatedly refer to its contents, the contract governing the purchase of the Vessel is not attached to the Amended Complaint. A district court ruling on a motion to dismiss generally may not consider "matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also id.* ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation marks and citations omitted)). Here, Plaintiffs' claim for breach of implied warranties arises from the contract, no party disputes the authenticity of the contract, and Defendants attach it to each of their Motions to Dismiss. (ECF Nos. 28-1, 30-5.) Therefore, the Court finds that it may consider the contract's contents in deciding Defendants' Motions.

The contract between Stone Harbor Marina and Grace's Dream consists of a single page with text on both sides. (ECF No. 28-1 at 2-3.) On the front page, above the purchaser's signature

line, the contract states the following: "BY EXECUTION OF THIS SALES AGREEMENT, PURCHASER ACKNOWLEDGES HAVING READ ITS TERMS AND CONDITIONS, WHICH ARE CONTAINED ON BOTH SIDES OF THIS DOCUMENT, AND HAS RECEIVED A TRUE COPY OF THE SALES AGREEMENT."  The back of the contract contains 19 single-spaced paragraphs.  (ECF No. 28-1 at 3.)  Paragraph 14 of 19 is the warranties disclaimer. *Id*.  It states the following:

> WARRANTIES: Except to the extent required by State Law, Seller expressly disclaims all warranties, express or implied, including any implied warranty of merchantability or fitness for a particular purpose.  All warranties covering the equipment referenced on the face of this Agreement, if any, are made by and solely backed by Manufacturer.  Seller retains the right to perform or not to perform any and/or all warranty claims made by Purchaser against the Manufacturer on any product sold or distributed by Seller.  Seller further does not warranty nor guarantee any specific performance capability including but not limited to: speed, range, fuel economy, sea keeping ability, displacement, length overall, beam, freeboard, draft or dead rise.

*Id*. at 3.

Plaintiffs contend that this disclaimer does not meet the conspicuousness standard set by statute because it appears in small font on the back page of the contract in Paragraph 14 of 19 single-spaced paragraphs, the page is neither signed nor initialed by Dayan, the language of the disclaimer is not set in a larger type or in contrast to the surrounding text in any way, and the heading, "WARRANTIES," indicates that the paragraph includes warranties rather than disclaiming them.  (ECF No. 33 at 12-14.)  The Court disagrees for several reasons.

First, the heading for the disclaimer paragraph is printed in capital letters, which is one of several express methods for making a term conspicuous consistent with the statute.  N.J. Stat. Ann. § 12A:1-201(10); *Styles v. Thor Motor Coach*, Civ. No. 21-19231, 2023 WL 2645024, at *4 (D.N.J. Mar. 27, 2023) ("[A] clause is conspicuous where a printed heading is in capitals, language

in the body of the document is larger than the surrounding text, or the relevant provision otherwise contrasts with the surrounding text in type, font, or color."); *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 471 (D.N.J. 2007) (same); *see also Mancuso v. MDG USA, Inc.*, Civ. No. 23-1963, 2024 WL 1230149, at *2 (3d Cir. Mar. 22, 2024) (noting that "headings in capital letters are 'conspicuous'" for purposes of determining whether an arbitration clause was enforceable). Setting the language of the disclaimer itself in larger font or in contrasting type are other methods of making a term conspicuous, but the statute does not require the presence of all methods for the disclaimer to satisfy the standard. N.J. Stat. Ann. § 12A:1-201, cmt. 10; *see also Styles*, 2023 WL 2645024, at *4.

In addition, while the disclaimer appears on the back page of a two-page contract in Paragraph 14 of 19, that location is not dispositive of conspicuousness. *See Vartek, LLC v. Axiall, LLC*, Civ. No. 18-01455, 2019 WL 1316415, at *4 (W.D. Pa. Mar. 22, 2019) ("The fact that the disclaimer does not appear on the face of the Supply Agreement does not carry as much weight as Plaintiff gives it . . . [T]he location of a disclaimer on the reverse side of a contract alone does not render the disclaimer inconspicuous." (internal quotation marks omitted)). When viewing the contract as a whole, there are only two headings in capital letters on the back page— "WARRANTIES" and "BROKERAGE BOAT SALE"—and the "WARRANTIES" heading comes first. (ECF No. 28-1 at 3.) The Court finds that a reasonable person would be drawn to Paragraph 14 as its type stands out when juxtaposed against the surrounding text, which is printed in smaller-sized font.[10]

---

[10]      *See M & M Trucking Gudullu, LLC v. Liberty Kenworth-Hino Truck Sales, Inc.*, 653 F. Supp. 3d 162, 170 (D.N.J. 2023) ("While capitalized print is not limited exclusively to this warranty section, the additional capitalized language elsewhere does not obscure the disclaimer when the [] Agreement is viewed in its entirety."); *Lala v. ADT Sec. Servs., Inc.*, Civ. No. 10-2698, 2010 WL 4923452, at *5 (D.N.J. Nov. 29, 2010) ("The page on which that disclaimer appeared

Furthermore, the location of the disclaimer does not render it inconspicuous because directly above the signature line for Grace's Dream, the contract incorporates the terms on the back page and requires Grace's Dream to accept them by signing, which it did: "BY EXECUTION OF THIS SALES AGREEMENT, PURCHASER ACKNOWLEDGES HAVING READ ITS TERMS AND CONDITIONS, WHICH ARE CONTAINED ON BOTH SIDES OF THIS DOCUMENT, AND HAS RECEIVED A TRUE COPY OF THE SALES AGREEMENT." (ECF No. 28-1 at 3); *see also Vartek, LLC*, 2019 WL 1316415, at *3 ("The disclaimer does not appear on the face of the Agreement; however, directly above the signature line and in bold capital letters the Agreement states, 'THE ATTACHED GENERAL TERMS AND THE ADDENDA IS AN INTEGRAL PART OF THIS AGREEMENT AS IF RECITED AT LENGTH OVER THE SIGNATURES HERETO AFFIXED.' . . . [This statement's] location directly above the signature line adds to its conspicuous nature."); *OKK USA Corp. v. Gen. Tool Specialties, Inc.*, Civ. No. 11-4167, 2011 WL 5117854, at *6 (D.N.J. Oct. 27, 2011) ("[T]he Sales Contract provided notice to the reader, that the Sales Contract incorporated additional terms that appeared 'on the attached hereof.' It also prompted the reader, immediately above the line for signature by the buyer, to note

---

included only three other provisions that had body text written in capital letters."); *Demorato v. Carver Boat Corps.*, Civ. No. 06-240, 2007 WL 1456207, at *6 (D.N.J. May 16, 2007) ("Although the disclaimer appears on the back of the contract, it is in capital letters and clearly stands out from the lower case letters contained on the rest of the page."); *see also Materials Handling Enter., Inc. v. Atlantis Techs., LLC*, 563 F. Supp. 3d 387, 397 (W.D. Pa. 2021) ("Though the font size of the Terms & Conditions is much smaller than that of the Quotation of which it is made part, the conspicuous character of the disclaimer is not diminished in any way, since it is the immediately surrounding text by which its conspicuousness is measured."); *Vartek, LLC*, 2019 WL 1316415, at *4 ("The General Terms document is only two pages long and the disclaimer is the only language that appears in all capital letters."); *Jordan v. Four Winds Int'l, Inc.*, Civ. No. 08-129, 2010 WL 1337691, at *9-10 (W.D. Pa. Mar. 31, 2010) (finding that the waiver provision on the back of the agreement "stood out" when "its type [was] juxtaposed against the rest of the agreement" and that "the presence of the additional capitalized language [did not] operate[] to obscure the relevant portions of the warranty disclaimer when the Agreement [wa]s viewed in its entirety" (internal quotation marks omitted)).

that the buyer accepted '[t]he Sales Contract including the terms and conditions of sale contained here[.]'"); *Jordan*, 2010 WL 1337691, at *9 (reasoning that reference to additional terms of an agreement directly above the signature line with language requiring the purchaser to certify that he read the back of the agreement along with other factors puts a reasonable person on notice to read all terms and conditions).

The Court also disagrees that the heading of "WARRANTIES" is inconspicuous despite being in capital letters because it gives the impression that the paragraph promises warranties instead of waiving them. Shortly following the heading, it is clear that the paragraph disclaims warranties—"WARRANTIES: Except to the extent required by State Law, Seller expressly disclaims all warranties, express or implied, including any implied warranty of merchantability or fitness for a particular purpose." (ECF No. 28 at 3.) Indeed, there are no warranties set forth in this paragraph, only disclaimers, and those disclaimers expressly include the implied warranty of merchantability and fitness for a particular purpose. (*Id.*) These factors combined with those set forth above, including the fact that "WARRANTIES" is the first of only two capitalized headings on that page of the contract, are sufficient to establish that a reasonable person ought to have noticed the disclaimer. *See FMC Finance Corp. v. Murphree*, 632 F.2d 413, 419 (5th Cir. 1980) (finding that a warranty disclaimer under the heading "Warranties" was sufficiently conspicuous).

Finally, the Court is not persuaded by the argument that because Dayan did not sign or initial the back page, the disclaimer is inoperative. Plaintiffs cite no authority to support that any such signature is required for purposes of conspicuousness. Moreover, the front page of the contract contains a statement that there are terms and conditions on both sides of the document, which Grace's Dream acknowledged with the signature of its representative, Dayan. The Court finds the disclaimer to be sufficiently conspicuous for the reasons stated above, notwithstanding

the lack of signature on the back page. *See Atl. Health Sys., Inc. v. Cummins Inc.*, Civ. No. 08-3194, 2010 WL 5252018, at *6 (D.N.J. Dec. 17, 2010) (finding the warranty disclaimer to be conspicuous despite the plaintiff's lack of signature on the page containing it because plaintiff cites no legal authority for any such requirement).

Indeed, the only case that Plaintiffs rely on to support its contention that the disclaimer is not conspicuous is *Realmuto v. Straub Motors*, 322 A.2d 440 (N.J. 1974), and that case is distinguishable. In a footnote, the court reasoned that the warranty disclaimer on the back of the sales agreement at issue was inoperative because to give effect to it would be unreasonable in view of the 30-day warranty written on the face of the contract. *Id*. at 442 n.2. Also, the court found that the disclaimer "d[id] not mention merchantability and [wa]s not conspicuous." *Id*. The court, however, provided no explanation for why the provision was not conspicuous. *Id*. It quoted the printed disclaimer language in all lowercase letters with no contrasting type, making no mention of whether this language was capitalized, bolded, or set apart in any way. *Id*. ("It is expressly agreed that there are no warranties, express or implied, made by either the selling dealer or the manufacturer on the motor vehicle, chassis, or parts furnished hereunder . . . ."). Unlike *Realmuto*, Plaintiffs do not argue that language found elsewhere in the contract would render the disclaimer unreasonable if given effect. In addition, the disclaimer here expressly mentions merchantability and is set off by a heading in capital letters.

In sum, the Court concludes that the contract, taken as a whole, sets forth the warranty disclaimer in a sufficiently conspicuous manner such that a reasonable person ought to have noticed it. Because it finds that the disclaimer is enforceable, the Court dismisses Plaintiffs' claim for breach of implied warranties (Count VI).

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, and other good cause shown, Pursuit Boats' Motion to Dismiss (ECF No. 28) is **DENIED** without prejudice, and Stone Harbor Marina's Motion to Dismiss (ECF No. 30) is **GRANTED in part** and **DENIED in part**.  Counts IV and V against Stone Harbor Marina are **DISMISSED** without prejudice.  Count VI against Stone Harbor Marina is **DISMISSED** with prejudice.  Stone Harbor Marina's Motion regarding the claims brought by Dayan is **DENIED** without prejudice.  Stone Harbor Marina's Motion is **DENIED** in all other respects.

An appropriate Order follows.


Dated: February 5, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE